UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                          Case No. 19-27117-BKC-PGH

AMIR AVITAN                                                     Chapter 7

    Debtor.
_____/


LABRADOR & FUNDADORA CORPORATION,
a Florida Corporation d/b/a V & V Windows,                      Adv. Pro. No. _____

    Plaintiff,

v.

AMIR AVITAN,
 aka ANDY VITALLI

    Defendant.
_____/

**COMPLAINT FOR NON-DISCHARGEABILITY
PURSUANT TO 11 U.S.C. § 523(a)(2),(4), & (6)**

Plaintiff, Labrador & Fundadora Corporation ("Plaintiff" or "Labrador"), a creditor and party in interest in the above-captioned bankruptcy case (the "Bankruptcy Case"), files this complaint (the "Complaint") against Amir Avitan aka Andy Vitalli (the "Debtor" or "Defendant") for non-dischargeability pursuant to 11 U.S.C. § 523(a)(2), (4), & (6) of all claims asserted by Plaintiff (collectively, the "Labrador Claim") arising from the Machine Purchase (defined herein) made by Labrador from the Defendant and the Final Default Judgment entered against the Defendant in the Florida state court. In support thereof, Plaintiff respectfully alleges:

## JURISDICTION AND VENUE

1. This adversary proceeding is commenced pursuant to Section 523(a) of Title 11 of the United States Code (the "Bankruptcy Code") and applicable Florida law.

2. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and is authorized to hear, determine, and enter appropriate orders and judgments in this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

4. All conditions precedent to the filing of this action have been performed, waived, satisfied, or have occurred.

## PARTIES

5. Plaintiff is an active Florida Corporation doing business in Miami-Dade County.

6. Defendant was the registered agent, principal, and owner of Ferracci Machines, Inc. ("Ferracci"), a now inactive Florida Corporation situated in Broward County, but doing business in Miami-Dade County, Florida.

7. Defendant is a resident of Broward County, Florida.

## FACTS

**A.    The Machine Purchase**

8. Plaintiff is in the business of manufacturing custom stock windows and doors.

9. Ferracci was a supplier and re-seller of machinery and equipment for the window and door industry.

10. On or about October 16, 2015, Defendant approached Plaintiff in connection with the purchase or lease of a highly specialized piece of equipment called the Alcora III CNC Fully Automatic Programmable Sawing and Milling Machine (the "CNC Machine").

11.     Due to the highly specialized nature of the CNC machine and its high cost, Plaintiff asked Defendant if the CNC Machine could perform the tasks required by Plaintiff at the required measurements and pace.

12.     Defendant assured Plaintiff that the CNC Machine could perform the specialized work that Plaintiff required. Additionally, Defendant made a series of promises and representations as to the operation, performance, and suitability of the CNC Machine to perform in accordance with Plaintiff's needs. These promises and representations were detailed in a printed pamphlet given to plaintiff by Defendant at their initial meeting. The pamphlet was an exhibit to Defendant's Florida State Court Complaint (the "Civil Complaint") to which is attached hereto as Exhibit "A".

13.     Justifiable replying on Defendant's promises and representations, Plaintiff agreed to acquire the CNC Machine for its manufacturing operation at a cost of Two-Hundred Thirty-Nine Thousand Dollars ($239,000.00).

14.     Plaintiff entered into a purchase and lease agreement with Leaf Financial in order to fund the acquisition of the CNC Machine. A copy of the purchase and lease agreement is also an exhibit to the Civil Complaint attached.

15.     On or about November 10, 2015, Leaf Financial paid Ferracci the total purchase price for the CNC Machine, and the CNC Machine was delivered to Plaintiff shortly thereafter.

16.     Plaintiff began experiencing problems with the CNC Machine from the day of delivery. Due to the CNC Machine's electrical requirements, Plaintiff had to install a new transformer in order to power the CNC Machine. Plaintiff was not told by the Defendant of the additional electrical requirements at any point prior to the delivery of the CNC Machine.

17.     After finally being able to power the CNC Machine, Plaintiff began experiencing problems with the programming and operations of the CNC Machine. After numerous failed

attempts by Defendant to fix the programming issues, Defendant referred Plaintiff to Sheffield Tool Inc. ("Sheffield"), in order to get the CNC Machine to work properly.

18. Plaintiff paid Sheffield Thirty-Eight Thousand Five-Hundred and Two Dollars and Twenty-Six Cents ($38,502.26) to fix the programming issues with the CNC Machine over a period of more than six (6) months, but Sheffield was unable to get the CNC Machine to adequately operate as promised by Defendant.

19. On or about November 10, 2016, Mr. Adil Sasmaz, the international sales director of Ozcelik Makina, the company with manufacturers the CNC Machine, visited Plaintiff's manufacturing operation alongside one of their technicians in order to examine the CNC Machine. Mr. Sasmaz confirmed to Plaintiff that Defendant knowingly sold Plaintiff the wrong machine. Mr. Sasmaz also informed Plaintiff that Defendant has not paid the full amount owed to the manufacturer for the CNC Machine, and that the CNC Machine would not work for windows because of the type of frames used by Plaintiff.

20. Upon information and belief, at the time Defendant ordered the CNC Machine for Plaintiff, Defendant was informed by the manufacturer of the CNC Machine that it was impossible for the CNC Machine to operate to Plaintiff's required standards.

21. Knowing that the CNC Machine could not possibly perform to the standards promised and represented to Plaintiff, Defendant nonetheless ordered the CNC Machine from the manufacturer and sold it to Plaintiff.

**B.   The State Court Case**

22. On February 3, 2017, Plaintiff filed a five (5) count Complaint against Defendant and Ferracci in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County,

Florida with the case number 2017-002811-CA-01 (the "State Court Case"). As previously mentioned, the Civil Complaint is attached hereto as Exhibit "A".

23. The five (5) counts included in the Civil Complaint were (i) revocation of acceptance, (ii) breach of express warranty, (iii) breach of implied warranty; fitness for particular purpose, (iv) fraud in the inducement, and (v) piercing the corporate veil of Ferracci Machines, Inc.

24. The Fraud in the Inducement count alleged that the Defendant made a series of false statements concerning material facts when he represented to Plaintiff that the CNC Machine would be capable of performing to the standards set by Plaintiff during negotiations, that Defendant was informed by the manufacturer that the CNC Machine would not be able to perform as Plaintiff required at the time the unit was first ordered.

25. Additionally, the Plaintiff alleged that at the time the contract was entered into, the Defendant continued to falsely represent the CNC Machine's ability to perform to the standards set by Plaintiff. Defendant did so even after he was informed by the manufacturer that such representations were false, and after the CNC Machine was delivered to Plaintiff. Defendant was told by Plaintiff that the only way it would continue with the acquisition of the CNC Machine was if it could perform to the specific standards required by Plaintiff for their manufacturing on windows and doors.

26. Plaintiff justifiably relied on Defendant's false promises and representations regarding the CNC Machine's ability to perform, and based on that reliance, proceeded with the acquisition of the CNC Machine. As such, Plaintiff was and continues to be injured by Defendant's false promises and representations.

27. In the count for piercing the corporate veil of Ferracci Machines, Inc., the Plaintiff alleged that Ferracci was a mere instrumentality and alter ego of Defendant and was used by Defendant to mislead Plaintiff and perpetrate a fraud upon it. From the moment Plaintiff was first approached in relation to the purchase of the CNC Machine, Ferracci was represented as being the alter ego of the Defendant. Defendant personally negotiated the terms of the agreement with Plaintiff, and constantly held himself out to be the final decision maker.

28. Defendant was fully aware that the CNC Machine would not perform to the specific requirements promised, but nevertheless continued to negotiate the sale of the CNC Machine and eventually convinced Plaintiff to rely on his knowingly fraudulent representations.

29. Defendant failed to pay the manufacturer for the CNC Machine even after full payment was issued by Leaf Financial on behalf of Plaintiff and attempted to defraud the manufacturer by alleging that Plaintiff refused to pay for the machine. Upon information and belief, Defendant retained all the funds from the sale of the CNC Machine for himself and for his own personal benefit without regard to Ferracci or even payment to the CNC Machine's manufacturer. As such Plaintiff argued that the corporate fiction of Ferracci should be ignored and Defendant should be held personally liable for the obligations of Ferracci.

30. On May 31, 2017, Plaintiff filed a Motion for Default against Defendant and Ferracci and Default was entered by the state court on June 8, 2017.

31. On July 14, 2017, Plaintiff filed a Motion for Default Final Judgment and on July 31, 2017, Judge Thomas Rebull entered a Final Default Judgment against Defendant and Ferracci for a total sum of Two-Hundred Eighty-Two Thousand Five-Hundred Forty-Two Dollars and Sixty-Five Cents ($282,542.65). A copy of the Final Default Judgment is attached hereto as Exhibit "B".

32. The Final Default Judgement was recorded with the Miami-Dade County Clerk of Court on August 1, 2017.

    **C.**    **The Debtor's Chapter 7 Case**

33. On December 27, 2019 (the "Petition Date"), the Debtor filed a Chapter 7 bankruptcy petition and an incomplete set of schedules [ECF No. 1] (the "Initial Schedules").[1]

34. Thereafter, Leslie S. Osborne was appointed the Chapter 7 Trustee (the "Chapter 7 Trustee") of the Debtor's estate [ECF No. 2] and the Section 341 Meeting of Creditors (the "341 Meeting") was scheduled for January 30, 2020.

35. On January 9, 2020, the Debtor filed another set of schedules (the "Additional Schedules") [ECF No. 12].

36. The 341 Meeting was held and concluded on January 30, 2020 and on January 31, 2020, the Chapter 7 Trustee entered a report of no distribution [ECF No. 17] (the "RND").

37. On March 13, 2020, the Chapter 7 Trustee filed his Notice to Withdraw Report of No Distribution (the "Notice to Withdraw RND") [ECF No. 26].

38. The deadline for Plaintiff to file any objection to discharge / dischargeability is March 30, 2020. As such, this Complaint is timely.

**COUNT I:  NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(A)(2)(A)**

39. Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40. This is an action to declare the Labrador Claim non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

---

[1] Unless otherwise noted, all docket entry references made herein are to the docket maintained in the Debtor's main bankruptcy proceeding, assigned case number 19-27117-PGH (defined previously as the "Bankruptcy Case").

7

41. Pursuant to § 523(a)(2)(A) of the Bankruptcy Code, the Court may declare any claim non-dischargeable if the claim arises from a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

42. The Defendant made numerous and repeated false and fraudulent representations to Labrador regarding the CNC Machine's ability to perform to the standards set by Plaintiff, in order to induce Labrador to purchase the CNC Machine (the "Purchase"),[2] with the intent of deceiving Labrador.

43. Defendant was informed by the manufacturer that the CNC Machine would not be able to perform as Plaintiff required at the time the unit was first ordered and at the time the contract was entered into, Defendant continued to falsely and fraudulently represent to Plaintiff the CNC Machine's ability to perform even after being informed by the manufacturer that it was impossible for the CNC Machine to operate to Plaintiff's required standards. Defendant continued to do so even after he was informed by the manufacturer that such representations were false, and after the CNC Machine was delivered to Plaintiff.

44. Labrador relied upon the Defendant's false and fraudulent representations regarding the CNC Machine's capabilities at the time the contract was entered into, and again after the CNC Machine was delivered and the Plaintiff incurred the additional costs of attempting to fix the programming issues in order to adequately operate as promised by Defendant.

---

[2] The Labrador Claim consists of the debt arising from the purchase of the CNC Machine and the Default Final Judgment.

45. The Debtor therefore fraudulently obtained money, property, services, or an extension, renewal, or refinancing of credit, by:

　　a) Making false and fraudulent representations regarding the CNC Machine's ability to perform with the purpose and intent of deceiving Plaintiff, and

　　b) Causing Plaintiff to justifiably rely upon such false and fraudulent representations.

46. Further, with respect to the Defendant's false and fraudulent representations:

　　a) Labrador's reliance upon the Debtor's representations was justifiable and reasonably founded; and

　　b) Labrador sustained a loss as a proximate result of the Defendant's representations.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment against the Defendant:

(i) Declaring the Labrador Claim non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

(ii) Ordering the payment of all costs and expenses incurred in regard to this action; and

(iii) Awarding any other relief the Court deems appropriate.

**COUNT II: NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(A)(4)**

47. Plaintiff hereby re-alleges every allegation in paragraphs 1 through 38 as if fully set forth herein.

48. This is an action to declare the Labrador Claim non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

49. Pursuant to § 523(a)(4) of the Bankruptcy Code, the Court may declare any claim non-dischargeable if the claim arises from a debt for embezzlement.

50. Embezzlement is the act of withholding assets for the purpose of conversion of such assets by one or more personals to whom the assets were entrusted, either to be held or to be used for specific purposes.

51. Plaintiff, through Leaf Financial, made payment in full to Defendant for the purchase of the CNC Machine with the understanding that the funds received by the Defendant would be used to pay the CNC Machine's manufacturer.

52. The Defendant made false and fraudulent representations to Labrador regarding the payment to the manufacturer of the CNC Machine even after full payment was issued to the Defendant by Leaf Financial on behalf of Plaintiff.

53. The Defendant made false and fraudulent representations to the CNC Machine's manufacturer by alleging that Plaintiff refused to pay for the machine, even after receiving full payment from Leaf Financial on behalf of Plaintiff.

54. The Defendant withheld all the funds from the sale of the CNC Machine for himself for his own personal benefit without making any payment to the CNC Machine's manufacturer.

55. The Debtor made these representations with the intent to deceive Plaintiff and the CNC Machine's manufacturer in order to convert the funds to his own use and benefit.

56. The Defendant fraudulently appropriated Plaintiff's property for his own use and benefit by:

> a) Accepting payment in full from Plaintiff, through Leaf Financial, for the CNC Machine;
>
> b) Withholding payment to the CNC Machine's manufacturer;

    c) Making false and fraudulent representations to Labrador regarding the payment to the manufacturer of the CNC Machine;

    d) Making false and fraudulent representations to the CNC Machine's manufacturer by alleging that Plaintiff refused to pay for the machine; and

    e) Withholding all the funds from the sale of the CNC Machine for himself for his own personal benefit without making any payment to the CNC Machine's manufacturer, despite representations to the contrary to Plaintiff.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment against the Defendant:

    (i) Declaring the Labrador Claim non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

    (ii) Ordering the payment of all costs and expenses incurred in regard to this action; and;

    (iii) Awarding any other relief the Court deems appropriate.

### COUNT III: NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(A)(4)
### (Plead in the Alternative to Count II)

57. Plaintiff hereby re-alleges every allegation in paragraphs 1 through 38 as if fully set forth herein.

58. This is an action to declare the Labrador Claim non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

59. Pursuant to § 523(a)(4) of the Bankruptcy Code, the Court may declare any claim non-dischargeable if the claim arises from a debt for larceny.

60. Larceny is the unlawful taking or theft of the personal property of another person or business.

61. The Defendant made false representations to Plaintiff regarding the CNC Machine's ability to perform to the specific standards required by Plaintiff for their manufacturing on windows and doors, even after being informed of the impossibility of the CNC Machine to meet those standards.

62. The Defendant made false and fraudulent representations to Plaintiff regarding the payment to the CNC Machine's manufacturer even, after receiving payment in fill from Leaf Financial on behalf of Plaintiff.

63. The Defendant made false and fraudulent representations to the CNC Machine's manufacturer alleging that Plaintiff refused to pay for the machine, even after receiving full payment from Leaf Financial on behalf of Plaintiff.

64. The Defendant made these representations with the intent to deceive Plaintiff or to cause Plaintiff to rely upon the representations.

65. The Debtor fraudulently and unlawfully took and carried away Plaintiff's property with the intent to permanently convert such property to her own use without Plaintiff's consent by:

   a) Making false and fraudulent representations to Plaintiff regarding the CNC Machine's ability to perform to the specific standards required by Plaintiff for their manufacturing on windows and doors, even after being informed of the impossibility of the CNC Machine to meet those standards in order to induce the Plaintiff to purchase the CNC Machine;

   b) Accepting payment in full from Plaintiff, through Leaf Financial, for the CNC Machine;

   c) Withholding payment to the CNC Machine's manufacturer;

    d) Making false and fraudulent representations to Labrador regarding the payment to the manufacturer of the CNC Machine;

    e) Making false and fraudulent representations to the CNC Machine's manufacturer by alleging that Plaintiff refused to pay for the machine; and

    f) Retaining all the funds from the sale of the CNC Machine for himself for his own personal benefit without making any payment to the CNC Machine's manufacturer, despite representations to the contrary to Plaintiff.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment against the Defendant:

    (i) Declaring the Labrador Claim non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

    (ii) Ordering the payment of all costs and expenses incurred in regard to this action; and;

    (iii) Awarding any other relief the Court deems appropriate.

## COUNT IV: NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(A)(6)

66. Plaintiff hereby restates and incorporates the allegations contained in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

67. This is an action to declare the Labrador Claim non-dischargeable pursuant to 11 U.S.C. §523(a)(6).

68. Pursuant to § 523(a)(6) of the Bankruptcy Code, the Court may declare any claim non-dischargeable if the claim arises from a debt for "willful or malicious injury by the debtor to another entity or to the property of another entity."

69. The Defendant inflicted an intentional, willful, and malicious injury upon Plaintiff by repeatedly making false and fraudulent representations to Plaintiff regarding the CNC Machine's ability to perform to the specific standards required by Plaintiff for their manufacturing on windows and doors, even after being informed of the impossibility of the CNC Machine to meet those standards.

70. On multiple occasions prior to the execution of the purchase contract, after the delivery of the CNC Machine, and after the attempted costly repair of the CNC Machine, the Defendant made numerous false and fraudulent representations to Plaintiff regarding the CNC Machine's ability to perform to the specific standards required by Plaintiff, thereby causing Plaintiff willful and malicious injury.

71. The Defendant intended to harm Plaintiff by willfully and intentionally misrepresenting to the Plaintiff the capabilities of the CNC Machine despite knowing the CNC Machine would be useless to the Plaintiff it was not capable of meeting the standards required by the Defendant.

72. Additionally, the Defendant intended to harm Plaintiff by willfully and intentionally misrepresenting to Plaintiff of the payment to the CNC Machine's manufacturer and willfully and intentionally misrepresenting to the CNC Machine's manufacturer alleging that Plaintiff refused to pay for the machine, even after receiving full payment from Leaf Financial on behalf of Plaintiff and withholding same for his own personal benefit.

73. As a result of Defendant's injurious actions, Plaintiff has sustained permanent injury due to the inability of the CNC Machine to perform to the precise specifications required by Plaintiff and by Defendant's failure to pay the manufacturer of the CNC Machine even after receiving payment in full from the Plaintiff.

74. The Defendant's repeated and intentional false and fraudulent misrepresentations of the capabilities of the CNC Machine demonstrates the Defendant's intent to willfully and maliciously injure Plaintiff or Plaintiff's property.

75. The Debtor inflicted a willful and malicious injury upon Plaintiff or Plaintiff's property by:

   a) Making repeated false and fraudulent representations to Plaintiff regarding the CNC Machine's ability to perform to the specific standards required by Plaintiff for their manufacturing on windows and doors, even after being informed of the impossibility of the CNC Machine to meet those standards in order to induce the Plaintiff to purchase the CNC Machine;

   b) Accepting payment in full from Plaintiff, through Leaf Financial, for the CNC Machine;

   c) Withholding payment to the CNC Machine's manufacturer;

   d) Making false and fraudulent representations to Labrador regarding the payment to the manufacturer of the CNC Machine;

   e) Making false and fraudulent representations to the CNC Machine's manufacturer by alleging that Plaintiff refused to pay for the machine; and

   f) Retaining all the funds from the sale of the CNC Machine for himself for his own personal benefit without making any payment to the CNC Machine's manufacturer, despite representations to the contrary to Plaintiff.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment against the Defendant:

(i) Declaring the Labrador Claim non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

(ii) Ordering the payment of all costs and expenses incurred in regard to this action; and;

(iii) Awarding any other relief the Court deems appropriate.

### RESERVATION OF RIGHTS

Plaintiff reserves the right to amend this Complaint, upon completion of discovery, to assert any additional or alternative claims for relief against the Defendant as may be warranted under the circumstances allowed by law.

Dated: March 30, 2020

                **LSAS ATTORNEYS, PLLC**
                *Counsel to Plaintiff*
                One Biscayne Tower
                2 South Biscayne Blvd., Suite 2300
                Miami, Florida 33131
                t: 305.894.6163
                f: 305-503-9447
                e: cs@lsaslaw.com

                By: */s/ Christian Somodevilla*
                  CHRISTIAN SOMODEVILLA, ESQ.
                  FLORIDA BAR NO. 59539